**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St., #80594
San Francisco, CA 94104
Telephone: (415) 488-8041
Facsimile: (415) 651-9700
*Attorneys for Plaintiff,*
David Wilson Hardie

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**

**DAVID WILSON HARDIE,**

Plaintiff,

v.

**WELLS FARGO BANK, N.A., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES LLC, AND TRANSUNION LLC,**

Defendants.

**Case No.:** 4:26-cv-14685

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

1.) **CONSUMER CREDIT REPORTING AGENCIES ACT, CALIFORNIA CIVIL CODE § 1785;**
2.) **CALIFORNIA IDENTITY THEFT ACT, CALIFORNIA CIVIL CODE §1798.93;**
3.) **ELECTRONIC FUND TRANSFER ACT, 15 U.S.C. § 1693, ET SEQ.;**
4.) **FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681,;**
5.) **CALIFORNIA PENAL CODE 530.8**
6.) **ROSENTHAL FAIR DEBT COLLECTION ACT CALIFORNIA CIVIL CODE § 1788.17**

**DEMAND FOR JURY TRIAL**

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

## INTRODUCTION

1. On December 10th, 2025, David Hardie went to his Wells Fargo branch in Antioch to make a deposit. His pay went into that checking account. When he saw how low the balance was, he asked a banker for help. They went through the account statements together and found Zelle transfers Hardie had never made or approved.

2. Hardie also learned that Wells Fargo had issued a $9,000 personal loan in his name. He had never applied for it. Wells Fargo put the loan proceeds into the checking account from which the unauthorized transfers were made. Hardie did not use or keep the loan money.

3. By the time Hardie walked into the branch, Wells Fargo had already found that someone had opened a separate Wells Fargo credit card in his name without his consent. The bank cleared him of that debt.

4. On that December 10th, a branch banker helped him report the missing money on the day he discovered it.

5. Wells Fargo then denied the Zelle fraud claim and held him responsible for the loan that had fraudulently been taken out in his name.

6. Wells Fargo pointed to a secure online banking session to explain the transfers. And, it pointed to the deposit of the funds from the fraudulent loan application into Hardie's checking account to explain why he owed the loan.

7. Hardie asked the bank to look again. He also sent Wells Fargo and Experian a written identity theft notice that named the loan and explained what had happened.

8. Nearly a year after Hardie went to the branch, Wells Fargo still told him he owed $9,776.05. Experian still showed the loan as charged off and $9,776 past due.

9. Hardie brings this action to recover the money taken from his account, clear the debt Wells Fargo claims he owes, and obtain relief for the harm caused by the

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

false credit information.

10. **DAVID WILSON HARDIE** ("Plaintiff"), by Plaintiff's attorney, brings this action for damages, attorney fees, and costs, against **WELLS FARGO BANK, N.A., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES LLC, AND TRANSUNION LLC** for violations of: California Civil Code § 1785 et seq. (hereinafter "CCRAA"), the California identity Theft Act Cal. Civ. Code §1798.93 *et seq*., (hereinafter "CITA"), the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*. (hereinafter "EFTA"), the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq*., (hereinafter "FCRA"), and California Penal Code §530.8 and the Rosenthal Fair Debt Collection Practices Act Cal. Civ. Code §1788.17 *et seq*., (hereinafter "RFDCPA").

11. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

13. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

14. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of those Defendants named.

15. Unless otherwise stated, all the conduct engaged in by Defendants occurred in the State of California.

16. At all times relevant, Plaintiff was an individual residing within the State of California.

17. All correspondence referenced herein was sent to Plaintiff at an address located within the State of California.

**CCRAA**

18. The Consumer Credit Reporting Agencies Act (CCRAA), the California version of the Fair Credit Reporting Act (FCRA), was originally enacted in 1975. In language virtually identical to that found in the original FCRA legislation, the California Legislature stated the CCRAA's purpose was "to require that consumer credit reporting agencies adopt reasonable procedures" for handling credit information so as to ensure it was handled in a manner which was "fair and equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title."[1] In 1993, the California Legislature amended the CCRAA and added a section that imposes duties on furnishers similar to those found in the FCRA. For example, Civil Code § 1785.25(a) provides that the furnisher "shall not" furnish credit information to "any credit reporting agency if the person [furnisher] knows or should know the information is incomplete or inaccurate."

**EFTA**

19. "To address concerns raised by the increasing prevalence of electronic banking transactions, Congress enacted the Electronic Fund Transfer Act of 1978 (EFTA), 15 U.S.C. § 1693 *et seq.* Lawmakers viewed such transactions—processed through computer networks without human interaction—as 'much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods.'" *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 564 (9th Cir. 2002) (quoting H.R. Rep. No. 95-1315, at 2 (1978)).

---

[1] California Civil Code § 1785.1(d)

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

20. In the late 1970s, the American financial system began a profound shift away from paper checks and toward the "mysteries of the computer age."[2] The National Commission on Electronic Fund Transfers (NCEFT), established by Congress to investigate this phenomenon, declared in October 1977 that the nation was witnessing "a significant new choice" in financial affairs that marked "the transition to the post-industrial society."[3] This new landscape was characterized by "automated teller machines," "point-of-sale transfers," and "direct deposits" initiated by magnetic tape rather than paper instruments.[4]

21. For the banking industry, this transition offered the promise of immense profitability through efficiency. Congress recognized that these services offered "substantial cost savings" to financial institutions and the potential for "greater convenience, lower cost, increased security, and more efficient services."[5] By replacing labor-intensive paper processing with electronic signals, financial institutions stood to gain from the "economies of scale" inherent in mass data processing.[6]

22. However, this technological leap created a legal vacuum. As the Senate Committee on Banking, Housing, and Urban Affairs noted in 1978, existing consumer protection laws "were not drafted with EFT in mind, leaving the rights of consumers, as well as financial institutions... undefined in the law."[7] This uncertainty led to "legitimate consumer concerns" regarding the safety of their funds.[8] Unlike the check system, where a consumer could stop payment or

---

[2] Ronald L. Winkler, *The National Commission on Electronic Fund Transfers: Problems and Prospects*, Wash. U. L. Q. 507 (1977).
[3] *Final Report of the National Commission on Electronic Fund Transfers,* "EFT in the United States," p. 1 (Oct. 28, 1977).
[4] 15 U.S.C. § 1693a(7)
[5] S. Rep. No. 95-915, at 2 (1978)
[6] *See* 12 C.F.R. Part 1005, Supp. I, Comment 2(b)-2 (discussing economic function). *See generally Final Report of the National Commission on Electronic Fund Transfers* at 133 (discussing economies of scale).
[7] S. Rep. No. 95-915, at 2 (1978).
[8] *Id.*, at 3.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

verify a signature, EFT removed the consumer's direct control. The NCEFT found that consumers were rightfully asking: "How can the consumer be assured that he does not lose control of his financial transactions?"[9]

23. The banking industry and Congress realized that the electronic revolution would fail without the public's trust. In its Final Report, the NCEFT warned that "the future of EFT is inextricably tied to consumer acceptance."[10] The Commission concluded that the technology "must fulfill consumer needs," and if it failed to provide confidence, it was "unlikely to grow beyond its early stages."

24. To solve this impasse, Congress enacted the Electronic Fund Transfer Act (EFTA) as a statutory "grand bargain." The legislation was designed to provide "dual benefits": it would allay consumer concerns by creating a "Bill of Rights," while simultaneously providing financial institutions "a clear picture... of what their liabilities would be, enabling them to make more informed decisions on participating in EFT systems."[11]

25. Central to this bargain was the rejection of "private contract" as a means to determine liability for errors and fraud. The NCEFT viewed the "bargaining power between EFT providers and most customers" as "unequal." [12] Consequently, the Commission and Congress determined that liability rules must be set by federal statute, rather than by bank agreements, to ensure that "maximum protection should be provided to the individual consumer."[13]

26. Thus, the EFTA was passed with the explicit Congressional declaration that "the primary objective of this title, however, is the provision of individual

---

[9] *Final Report of the National Commission on Electronic Fund Transfers*, p. 16 (Oct. 28, 1977).
[10] *Id.*, at. 4.
[11] S. Rep. No. 95-915, at 3 (1978).
[12] *Final Report of the National Commission on Electronic Fund Transfers*, p. 55 (Oct. 28, 1977).
[13] *Id.* at 56.

consumer rights."[14] Under this framework, Financial Institutions gained the profitable efficiency of automation, but in exchange, they accepted strict procedures for error resolution and liability. When a Financial Institution fails to adhere to these statutory responsibilities, it disrupts the balance of the "grand bargain" that allows the electronic banking system to exist.

**FDCPA AND RFDCPA**

27. In enacting the FDCPA, Congress found that:

a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses. 15 U.S.C. § 1692.

28. Similarly, when enacting the RFDCPA, the California Legislature found that:

[14] 15 U.S.C. § 1693(b); Pub. L. 95-630, Title XX, § 902(b).

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

> The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civil Code § 1788.1(a)(1).

29. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

30. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

**FCRA**

31. The Fair Credit Reporting Act (FCRA), found at 15 U.S.C. § 1681, et seq., was originally enacted in 1970. The express purpose of the FCRA was to require that consumer reporting agencies adopt and implement "reasonable procedures" for ensuring that credit information about a consumer was collected, maintained, and dispensed "in a manner which is fair and equitable to the consumer with regard to

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

the confidentiality, accuracy, relevancy and proper utilization of such information …" FCRA, 15 U.S.C. §1681(b); *Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47, 127 S.Ct. 2201, 2205. The Congressional findings noted that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with of fairness, impartiality, and respect for the consumer's right to privacy." The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, who are called "furnishers."

## JURISDICTION AND VENUE

32. Jurisdiction of this court arises pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States and pursuant to 28 U.S.C. § 1367 for pendent state law claims.
33. This action arises out of Defendants' violations of: California Civil Code § 1785 et seq. (hereinafter "CCRAA"), the California identity Theft Act Cal. Civ. Code §1798.93 *et seq*., (hereinafter "CITA"), the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*. (hereinafter "EFTA"), the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq*., (hereinafter "FCRA"), and California Penal Code §530.8 and the Rosenthal Fair Debt Collection Practices Act Cal. Civ. Code §1788.17 *et seq*., (hereinafter "RFDCPA").
34. This Court has personal jurisdiction over Defendants as they do business within the State of California, have sufficient minimum contacts with this state, and otherwise purposefully avail themselves of the markets in the State of California through the promotion, sale, and marketing of their products and services within this state, to render the exercise of jurisdiction by this Court proper.
35. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

36. Plaintiff David Wilson Hardie resides in Antioch, Contra Costa County,

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

California.

37. Plaintiff is a consumer under 15 U.S.C. §§ 1681a(c) and 1693a(6) and California Civil Code § 1785.3(b), and a "debtor" within the meaning of California Civil Code § 1788.2(h)(1). He is an individual whose personal checking account, loan records, and credit information are at issue.

38. Plaintiff is a victim of identity theft within the meaning of California Civil Code § 1798.92(d). Someone used his personal information without his consent to obtain credit in his name. He did not use or possess the proceeds and submitted an FTC Identity Theft Report.

39. Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") is a federally chartered national banking association with its main office in Sioux Falls, South Dakota.

40. Wells Fargo is a financial institution under 15 U.S.C. § 1693a(9). It held Plaintiff's checking account, which he used for personal purposes, including receiving his wages.

41. Wells Fargo originated the personal loan, claims Plaintiff owes its balance, and is a claimant under California Civil Code § 1798.92(a).

42. Wells Fargo regularly furnishes credit account information to consumer reporting agencies. It furnished the disputed loan information about Plaintiff to Experian and other credit reporting agencies.

43. In the ordinary course of its business, Wells Fargo regularly collects or attempts to collect consumer debts on its own behalf, including personal loans it originates. Wells Fargo is therefore a "debt collector" within the meaning of California Civil Code § 1788.2(c).

44. Experian Information Solutions, Inc. (hereinafter "Experian") is an Ohio corporation with its headquarters at 475 Anton Boulevard, Costa Mesa, California 92626.

45. Experian regularly assembles and evaluates consumer credit information for fees and supplies consumer reports to third parties using interstate commerce.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

It is a consumer reporting agency under 15 U.S.C. § 1681a(f) and a consumer credit reporting agency under California Civil Code § 1785.3(d).

46. Equifax Information Services LLC (hereinafter "Equifax") is a Georgia limited liability company with headquarters at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

47. Equifax assembles and evaluates credit information for fees and supplies consumer reports to third parties using interstate commerce. It is a consumer reporting agency under 15 U.S.C. § 1681a(f) and a consumer credit reporting agency under California Civil Code § 1785.3(d).

48. TransUnion LLC (hereinafter "TransUnion") is a Delaware limited liability company with headquarters at 555 W. Adams Street, Chicago, Illinois 60661.

49. TransUnion assembles and evaluates credit information for fees and supplies consumer reports to third parties using interstate commerce. It is a consumer reporting agency under 15 U.S.C. § 1681a(f) and a consumer credit reporting agency under California Civil Code § 1785.3(d).

50. Plaintiff is informed and believes, and thereon allege that at all times herein mentioned Named Defendant were agents, officers, directors, managing agents, employee and/or joint venturer of each of their co-Defendant and, in doing the things hereafter mentioned, each was acting in the scope of his authority as such agent, officer, director, managing agent, employee, and/or joint venturer, and with the permission, knowledge, ratification, and consent of their co-Defendant, and each of them. Any reference hereafter to "Defendant" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

## FACTUAL ALLEGATIONS

51. In October 2025, someone was using Zelle to send money out of Plaintiff's Wells Fargo checking account. Plaintiff did not make or authorize the disputed

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

transfers or receive their proceeds.

52. On October 29th, 2025, a $700 online cash advance was made on Plaintiff's existing Wells Fargo Platinum credit card without his permission.

53. On November 5th, 2025, Wells Fargo opened a $9,000 personal loan in Plaintiff's name and deposited the proceeds into his checking account. Plaintiff did not apply for the loan or authorize anyone to apply for it.

54. Other people took the proceeds through the account activity Plaintiff disputes. Plaintiff did not keep or use the loan proceeds.

55. Plaintiff's Experian file shows that Wells Fargo obtained his credit information on November 5th, 2025. On information and belief, Wells Fargo obtained the report to decide the new loan application submitted that day.

56. Plaintiff did not request the loan, take part in the application, or authorize Wells Fargo to obtain his report for it.

57. On November 17th, 2025, Wells Fargo resolved a separate identity theft claim in Plaintiff's favor involving a newly opened Wells Fargo Visa card. Wells Fargo found the card had been opened without his consent. It released Plaintiff from liability and asked the credit reporting agencies to remove the account and the related inquiry.

58. The disputed Zelle withdrawals continued after the loan opened. The December checking statement shows repeated $100 transfers to the same named recipient. On December 9th, 2025, a further $600 online cash advance was made on Plaintiff's existing credit card without his permission.

59. On December 10th, 2025, Plaintiff went to his Wells Fargo branch in Antioch to make a deposit. His balance was much lower than he expected. A banker reviewed the account with him. Plaintiff discovered the disputed Zelle transfers and the loan taken out in his name.

60. On December 10th, 2025, Plaintiff identified the account and the disputed Zelle withdrawals to Wells Fargo and reported that he had not made or authorized

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

them. Wells Fargo opened a claim that day. Its records identify disputed transfers posted from October 14th, 2025, through December 8th, 2025.

61. Wells Fargo closed and replaced the checking account for security reasons that day. Plaintiff shut off online access at the time and redirected his wages to a different account.

62. Plaintiff made another fraud claim on December 16th, 2025. Wells Fargo denied the initial Zelle claim and recorded it closed on December 17th, 2025. Wells Fargo also denied claims over two cash advances on Plaintiff's existing card.

63. The claim Wells Fargo closed on December 17th covered transfers that posted through December 8th, 2025.

64. Plaintiff made two more fraud claims in January 2026. His disputed transfers included a separate group of payments initiated on December 9th, 2025, that appeared in his transaction review as December 11th, 2025 postings.

65. On December 26th, 2025, Plaintiff requested the documents Wells Fargo relied upon to deny his claim. Wells Fargo acknowledged receiving that request. Plaintiff obtained some records after asking for the evidence but, on information and belief, not all of them.

66. On January 19th, 2026, Plaintiff filed an identity theft complaint with the FBI's Internet Crime Complaint Center. He also complained to the Consumer Financial Protection Bureau.

67. On February 11th, 2026, Wells Fargo told Plaintiff that the disputed Zelle activity took place through a secure online banking session and that he or someone he authorized had made the transfers. Wells Fargo held Plaintiff liable for the disputed withdrawals.

68. In the same letter, Wells Fargo acknowledged the separate Visa identity theft finding. It also upheld its denial of the personal-loan claim and pointed to the loan application materials and the $9,000 deposit into Plaintiff's checking

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

account.

69. The loan application record Wells Fargo supplied shows the application was made online. The copy does not show the telephone number used to apply.

70. On information and belief, Wells Fargo continued investigating at least some of the later-reported checking transfers beyond ten business days without giving Plaintiff the required provisional credit. Plaintiff continued pursuing relief after the December denial and received another denial in February 2026.

71. By July 27th, 2026, Experian, Equifax, and TransUnion showed the disputed Wells Fargo loan in Plaintiff's credit information. The loan was one obligation that Wells Fargo claimed Plaintiff owed.

72. Equifax and TransUnion each showed the loan as charged off with a $9,776 balance as of June 30th, 2026. Equifax recorded that Capital One accessed Plaintiff's credit information on July 16th, 2026. TransUnion recorded that Capital One accessed his credit information for an account review on July 18th, 2026. On information and belief, those disclosures included the Wells Fargo loan while it was reported in Plaintiff's name.

73. On September 4th, 2026, Plaintiff signed an FTC Identity Theft Report. He identified the loan, the credit inquiry, and the disputed checking and credit card activity. He stated that he had never authorized the loan or the disputed transactions.

74. Plaintiff sent signed written notices in September 2026 to every Defendant named in this Complaint. He identified the Wells Fargo loan as an account someone else had opened and explained how he found out about it. He supplied his FTC report, identity documentation, and marked credit report pages. He asked the recipients to block the identity theft information and investigate his dispute.

75. Plaintiff's written notice reached Experian's designated post office box on September 11th, 2026.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

76. On September 15th, 2026, Wells Fargo received Plaintiff's signed letter dated September 7th, 2026. The letter identified the $9,000 personal loan opened in Plaintiff's name and stated that Plaintiff had never applied for or authorized it. Plaintiff enclosed his signed and submitted FTC Identity Theft Report, a copy of his driver's license, and proof of address. He also supplied his name, address, date of birth, and Social Security number, the same types of identifying information shown in Wells Fargo's loan application record. The letter expressly invoked California Penal Code § 530.8 and asked Wells Fargo to identify the types of information used to apply for the loan and to send copies of the application, authorization, and related transaction records. Plaintiff also requested the records Wells Fargo relied on to deny his checking-transfer claim.

77. Plaintiff also sent separate signed identity theft notices to Equifax and TransUnion. Each identified the loan, denied that Plaintiff opened it, and included the FTC report and identity documents.

78. Equifax's notice was delivered on September 11th, 2026.

79. TransUnion's notice was delivered on September 17th, 2026.

80. Equifax sent Plaintiff a letter dated September 14th, 2026, saying it could not block the information based on the documents he had provided. It asked for proof of identity, identification of the information, a statement that he did not make the transaction, and an identity theft report. His submission had already included those materials.

81. On September 18th, 2026, Wells Fargo again denied the loan claim. It said the evidence showed Plaintiff opened or used the account, made payments, or received a benefit. Wells Fargo offered to provide supporting records if Plaintiff asked, although it had already received his written request. Wells Fargo had previously provided a copy of a loan application summary. That copy did not show the telephone number used to apply. On information and belief, Wells Fargo did not provide all the requested loan application and authorization

records in its possession within ten business days after receiving Plaintiff's September request. Without those records, Plaintiff could not fully check who submitted or authorized the application or use that information to contest the debt Wells Fargo continued to claim he owed.

82. On September 18th, 2026, Experian wrote that it could not honor all or part of Plaintiff's dispute because it lacked enough information. It asked him to identify the disputed item and explain why it was wrong. Plaintiff's written notice had already identified the loan and explained why it did not belong to him.

83. Experian's September 18th, 2026 dispute results stated that it mailed updated credit reports to subscribers, including Capital One and Synchrony Financial. The report accompanying those results listed Plaintiff as responsible for the Wells Fargo loan and showed a $9,776 charge-off. On information and belief, the updated reports sent to third-party subscribers included that loan entry.

84. In separate September 18th, 2026 dispute results, Experian identified Plaintiff's existing Wells Fargo credit card entry and told him that it had deleted the entry.

85. In its September 23rd, 2026 dispute results, Equifax said it had removed the loan and the existing card. Equifax described both accounts as having been disputed as fraudulently opened. Plaintiff's letter to Equifax instead had said he had opened the card and disputed transactions on it.

86. Experian's October 5th, 2026 dispute results said previously blocked information had been put back. The same results identified and showed the updated loan.

87. Experian's October 6th, 2026 credit report showed the loan as charged off with $9,776 past due. Its October 8th, 2026 dispute results repeated the restoration language and showed the existing card that Experian had told Plaintiff it deleted. On information and belief, Experian restored at least the card and, alternatively, the loan after earlier clearing it from reporting – back to Plaintiff's

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

credit report.

88. In its October 9th, 2026 results, Experian said it updated the loan item. Its before-and-after entries still attributed the charged-off loan to Plaintiff. In a separate notice dated October 9th, 2026, Experian said it put previously blocked information back. The separate notice did not identify the item or tell Plaintiff which statutory authority for Experian to remove the block applied.

89. On information and belief, Experian notified Wells Fargo of the written dispute about the loan during its handling of the September dispute, and Wells Fargo verified or updated the loan as Plaintiff's. Experian's results showed an update on the loan without correcting who owed it. The later credit report said the credit reporting dispute investigation was complete and that Plaintiff disagreed.

90. On October 19th, 2026, Plaintiff requested his Experian file through AnnualCreditReport.com. Experian displayed an identity-verification error instead of providing the requested disclosure.

91. Plaintiff obtained his Equifax and TransUnion disclosures that same day. Neither showed the loan.

92. Plaintiff sent Experian a second signed request dated October 21st, 2026. It again identified the loan, explained that he had not opened it, and enclosed the FTC report and identification. The second request was delivered on October 27th, 2026.

93. On November 2nd, 2026, Experian asked Plaintiff to provide a recent, valid identity theft report. Plaintiff had already included his FTC report with his second request.

94. On November 11th, 2026, Experian's credit report still listed the loan as charged off and $9,776 past due. The report's score explanation identified the past-due amount as a reason his score was lower. The same loan did not appear on the Equifax or TransUnion reports Plaintiff obtained that day.

95. On November 11th, 2026, Experian again displayed an identity-verification

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

error when Plaintiff requested his file through AnnualCreditReport.com. The same day, Plaintiff's access to his Experian account was verified by a code and he obtained an Experian-branded report showing the loan. Experian had already received identification with his two written disputes.

96. On November 12th, 2026, Plaintiff called Wells Fargo's personal loan department to ask about the balance on the disputed loan. A Wells Fargo representative told Plaintiff he owed $9,776.05 and offered to settle the account for $3,910.42. Plaintiff had never applied for or authorized the loan. Before the call, Wells Fargo had already received Plaintiff's written notice identifying the loan as identity theft and enclosing his signed FTC Identity Theft Report.

## ACTUAL DAMAGES

97. As a result of Defendants' actions, omissions, and inaction, Plaintiff has suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment of credit denials, amongst others. Plaintiff has further spent countless hours and suffered financial loss in attempting to correct Defendants' reporting of inaccurate and derogatory information, without success, including but not limited to time loss, and charges for postage.

98. Wells Fargo's refusal to reimburse the unauthorized transfers left Plaintiff without his own money taken from the checking account. Plaintiff seeks to recover the amount of his own funds that Wells Fargo should have restored.

99. Wells Fargo's repeated decisions to hold Plaintiff responsible for the transfers and the loan caused him continuing stress and anger and required him to spend time returning to the branch, pursuing claims, and disputing the debt.

100. Experian's continued attribution of the loan to Plaintiff kept a $9,776 charge-off on his report, lowered the Experian-based score disclosed to him, and required him to spend additional time disputing the same account. Wells

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Fargo's continued reporting of the loan after notice from Experian contributed to that harm.

101. Equifax and TransUnion sent the disputed loan information to third parties, on information and belief, making Plaintiff appear responsible for a charged-off debt he did not owe. Equifax's failure to honor his blocking request kept the loan on file longer and delayed relief after he supplied evidence of identity theft.

102. Experian's restoration of deleted information required Plaintiff to check his file again and submit another dispute. Its failure to disclose his file when he requested it delayed his access to the information he needed to check and challenge the disputed reporting and required him to make additional requests.

103. Wells Fargo obtained Plaintiff's credit report for a new loan he did not request. The inquiry appeared in his Experian file, and Plaintiff had to dispute it.

## Causes of Action Claimed by Plaintiff

### First Cause of Action
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681b
### (Against Wells Fargo)

104. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

105. A person may obtain a consumer report only for a purpose authorized by the FCRA. A report for extending new credit must relate to a qualifying credit transaction involving that consumer.

106. Wells Fargo obtained Plaintiff's report on November 5th, 2025, for a loan he did not request or take part in. On information and belief, the report was obtained to decide that new loan application and no other permissible purpose

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

applied. The pull invaded Plaintiff's privacy and left an inquiry he had to dispute. Wells Fargo acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o.

**Second Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681c-2**
**(Against Experian and Equifax)**

107. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108. A consumer reporting agency must block reporting of identified identity theft information within four business days after receiving proof of identity, an identity theft report, identification of the information, and the consumer's statement that it does not relate to a transaction by the consumer.

109. Experian continued reporting the disputed loan after receiving both of Plaintiff's notices and asked for an FTC report it had already received. Alternatively, to the extent it initially blocked the loan or card data and then lifted the block, it lacked a reasonable statutory ground and failed to identify what it restored.

110. Equifax refused to block the loan based on supposed missing documents, then dealt with the item through its dispute process. On information and belief, it did not block the loan within four business days of receipt. Each named defendant acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o.

**Third Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681e(b)**

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**(Against Experian, Equifax, and TransUnion)**

111. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

112. When preparing a consumer report, a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy.

113. On information and belief, Experian's subscriber copies and the reports Equifax and TransUnion furnished to Capital One contained the disputed loan. Experian had Plaintiff's written evidence before mailing the subscriber copies. Equifax and TransUnion reported a major new delinquency from a November 2025 loan and, on information and belief, failed to use reasonable checks before attributing the loan and charge-off to Plaintiff. A check of the basis for attaching the loan to Plaintiff and the bank's source records would have exposed the unreliable attribution. Each named defendant acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and caused the resulting harm alleged above.

**Fourth Cause of Action**

**Violation of the Fair Credit Reporting Act**

**15 U.S.C. § 1681g(a)**

**(Against Experian)**

114. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

115. Upon request and proper identification, a consumer reporting agency must clearly and accurately disclose all information in the consumer's file that the FCRA requires it to disclose.

116. Experian rejected Plaintiff's October 19th and November 11th, 2026 requests through AnnualCreditReport.com. On information and belief, Plaintiff supplied

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

proper identification, as supported by the identity documents Experian already had and its verification of access to his Experian account on November 11th. The denials delayed his ability to examine and dispute the information in his file and required him to make additional requests. Experian acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o.

**Fifth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681i(a)(1)**
**(Against Experian and Equifax)**

117. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

118. A consumer reporting agency must conduct a reasonable reinvestigation when a consumer directly disputes information in his file and must record its current status or delete it as required.

119. Experian kept the loan attributed to Plaintiff without reasonably checking whether he applied for or used it. Equifax treated his existing card as an account he said was opened by fraud and removed it, even though his letter explained the card was his and identified only the activity he disputed. Each named defendant acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and caused the resulting harm alleged above.

**Sixth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681i(a)(2)(A)**
**(Against Experian)**

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

120. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

121. When a consumer disputes information, a consumer reporting agency must give timely notice to the furnisher and include all relevant information it received from the consumer.

122. On information and belief, Experian notified Wells Fargo but failed to transmit the signed statement and supporting identity theft materials or convey their substance. Experian claimed it lacked information already in the packet, then updated the loan while Wells Fargo continued assigning the loan to Plaintiff. Alternatively, if Experian sent the relevant material, Wells Fargo failed to review it as alleged separately. Experian did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and prolonged the false charge-off and required Plaintiff to keep disputing it.

**Seventh Cause of Action**

**Violation of the Fair Credit Reporting Act**

**15 U.S.C. § 1681i(a)(4)**

**(Against Experian and Equifax)**

123. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

124. A consumer reporting agency must review and consider all relevant information the consumer submits during a reinvestigation.

125. Experian requested information already supplied in Plaintiff's written submissions. Equifax likewise requested materials already in Plaintiff's packet and treated his existing card as fraudulently opened despite his clear explanation. Each named defendant acted knowingly or in reckless disregard of

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and caused the resulting harm alleged above.

**Eighth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681i(a)(5)(A)**
**(Against Experian)**

126. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

127. After reinvestigation, a consumer reporting agency must promptly delete or modify disputed information that is inaccurate or incomplete or cannot be verified.

128. Experian completed its initial reinvestigation and kept the loan attributed to Plaintiff. The materials available raised a specific identity theft dispute and did not verify that Plaintiff applied for or used the loan. Experian did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and prolonged the false charge-off and required Plaintiff to keep disputing it.

**Ninth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681i(a)(5)(B)**
**(Against Experian)**

129. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

130. Information deleted after reinvestigation under § 1681i(a)(5)(A) may be put back only after the furnisher certifies it is complete and accurate. The agency

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

must give written notice with the required details within five business days of putting the information back.

131. Experian identified and deleted Plaintiff's existing card entry and showed it again in October. On information and belief, the September reinvestigation resulted in deletion under § 1681i(a)(5)(A), and Experian put the entry back without the required certification. In the alternative, to the extent it deleted and restored the loan under the same provision, it put the false loan back without the required certification. Experian's notices did not clearly identify each item restored or link the restored item to the stated basis and source. The restoration required Plaintiff to dispute the reporting again. Experian acted knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o.

**Tenth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681i(a)(5)(C)**
**(Against Experian)**

132. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

133. A consumer reporting agency must maintain reasonable procedures to prevent information deleted under § 1681i(a)(5) from appearing again unless properly reinserted.

134. On information and belief, Experian allowed the deleted card entry, or alternatively the loan if deleted under § 1681i(a)(5)(A), to reappear after receiving an update from Wells Fargo without checking it against the deletion and enforcing the certification requirement. Experian did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently

in the alternative under § 1681o, and prolonged the false charge-off and required Plaintiff to keep disputing it.

**Eleventh Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**(Against Wells Fargo)**

135. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

136. A furnisher that receives a dispute from a consumer reporting agency must reasonably investigate the disputed information.

137. On information and belief, Wells Fargo received Experian's notice of Plaintiff's dispute and verified the loan without reasonably checking the application identifiers or comparing how the proceeds left the account with the checking activity and the bank's confirmed card fraud. Wells Fargo did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and prolonged the false loan reporting and the harm it caused Plaintiff.

**Twelfth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**(Against Wells Fargo)**

138. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

139. A furnisher must review all relevant information a consumer reporting agency provides with notice of a dispute.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

140. To the extent Experian sent the relevant FTC report, statement, or account materials, Wells Fargo received them and, on information and belief, failed to review them before assigning the loan to Plaintiff again. The bank repeated its earlier position without accounting for the specific facts in those materials or explaining how Plaintiff applied for or used the proceeds. Wells Fargo did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and prolonged the false loan reporting and the harm it caused Plaintiff.

**Thirteenth Cause of Action**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(Against Wells Fargo)**

141. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

142. After receiving a dispute from a consumer reporting agency, a furnisher must report the investigation results to that agency. If it finds the information incomplete or inaccurate, it must also report those results to the other nationwide consumer reporting agencies to which it furnished the information.

143. On information and belief, after notice from Experian, Wells Fargo returned an inaccurate result assigning the loan to Plaintiff. To the extent its review found the attribution inaccurate or incomplete, Wells Fargo failed to report that finding to Experian and each other nationwide agency to which it supplied the loan. Wells Fargo did so knowingly or in reckless disregard of Plaintiff's rights under 15 U.S.C. § 1681n, or negligently in the alternative under § 1681o, and prolonged the false loan reporting and the harm it caused Plaintiff.

**Fourteenth Cause of Action**

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**Violation of the CCRAA**

**Cal. Civ. Code §1785.14(b)**

**(Against Experian, Equifax, and TransUnion)**

144. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

145. When preparing a consumer credit report, a consumer credit reporting agency must follow reasonable procedures to assure maximum possible accuracy.

146. On information and belief, Experian furnished the false loan to its subscribers, and Equifax and TransUnion furnished it to Capital One in July. Each failed to use reasonable procedures to assure maximum possible accuracy before sending those reports. Each named defendant acted willfully or negligently and caused the credit-reporting harm alleged above.

**Fifteenth Cause of Action**

**Violation of the CCRAA**

**Cal. Civ. Code §1785.16(a)**

**(Against Experian and Equifax)**

147. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

148. A consumer credit reporting agency must reasonably reinvestigate a dispute about information in a consumer's file and take the action required by the results.

149. Experian kept the loan attributed to Plaintiff after receiving the identified dispute and supporting evidence. Equifax deleted an existing card as though it had been opened fraudulently despite Plaintiff's explanation that he had opened it and disputed specific transactions. Each named defendant acted willfully or negligently and caused the credit-reporting harm alleged above.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**Sixteenth Cause of Action**

**Violation of the CCRAA**

**Cal. Civ. Code §1785.16(b)**

**(Against Experian and Equifax)**

150. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

151. When reinvestigating a dispute, a consumer credit reporting agency must review and consider all relevant information the consumer supplies.

152. Experian and Equifax requested material Plaintiff had already provided. Equifax also treated the card as fraudulently opened despite Plaintiff's written description of the disputed transactions on his existing card. Each named defendant acted willfully or negligently and caused the credit-reporting harm alleged above.

**Seventeenth Cause of Action**

**Cal Civ Code § 1785.25(a)**

**(Against Wells Fargo)**

153. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

154. A person must not furnish information about a specific transaction or experience to a consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.

155. Wells Fargo furnished the personal loan as Plaintiff's after his repeated fraud reports, its own finding about the separate card, and his written notice identifying the loan. It knew or should have known that assigning him the loan and charge-off was inaccurate. Each named defendant acted willfully or negligently and caused the credit-reporting harm alleged above.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**Eighteenth Cause of Action**

**Violation of the CITA**

**Cal Civ. Code §1798.93, et seq.**

**(Against Wells Fargo)**

156. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

157. A victim of identity theft may seek relief against a claimant asserting a debt arising from identity theft.

158. Wells Fargo received written notice with Plaintiff's FTC report and supporting documents identifying the $9,000 loan. It failed to investigate the notice diligently and continued to claim the debt more than 30 days later. Plaintiff seeks the declaration, collection injunction, damages, fees, and any civil penalty authorized by California Civil Code § 1798.93.

**Nineteenth Cause of Action**

**Violation Of The Electronic Fund Transfer Act**

**15 U.S.C. § 1693g(a)**

**(Against Wells Fargo)**

159. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

160. The EFTA limits a consumer's liability for unauthorized electronic fund transfers. The limits depend on the circumstances, including the notice the consumer gave.

161. Wells Fargo held Plaintiff responsible for the unauthorized Zelle transfers from his personal checking account despite his prompt report after discovering them. It failed to restore his funds beyond any liability permitted by the statute.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**Twentieth Cause of Action**

**Violation Of The Electronic Fund Transfer Act**

**15 U.S.C. § 1693f(c)**

**(Against Wells Fargo)**

162. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

163. If a financial institution cannot complete its investigation within ten business days after timely notice of an electronic transfer error and uses a longer investigation period, it must give the consumer the provisional credit the statute requires.

164. Wells Fargo's December 17th, 2025 denial covered transactions that posted through December 8th. In the alternative, to the extent Wells Fargo continued its initial investigation of a later-reported set of unauthorized checking transfers beyond ten business days, on information and belief it failed to give Plaintiff the required provisional credit and kept his funds unavailable during the extended review.

**Twenty-First Cause of Action**

**Violation Of The Electronic Fund Transfer Act**

**15 U.S.C. § 1693f(a)**

**(Against Wells Fargo)**

165. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

166. After receiving timely notice of an electronic transfer error, a financial institution must reasonably investigate, determine whether an error occurred, and report its determination within the time the EFTA allows.

167. Wells Fargo relied on the use of an online session as evidence of approval. On

information and belief, it did so without adequately checking whether Plaintiff controlled the session or whether the transfer activity was connected to the identity theft Wells Fargo had already confirmed.

**Twenty-Second Cause of Action**
**Violation Of The Electronic Fund Transfer Act**
**15 U.S.C. § 1693f(e)(2)**
**(Against Wells Fargo)**

168. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

169. Section 1693f(e)(2) applies when a financial institution knowingly and willfully concludes there was no error even though it could not reasonably draw that conclusion from the evidence available during the investigation.

170. On information and belief, Wells Fargo knowingly and willfully found no error based on an online session even though it had the repeated transfers, Plaintiff's same-day denial of authority, and its own finding of unauthorized use of his identity.

**Twenty-Third Cause of Action**
**Violation Of The Electronic Fund Transfer Act**
**15 U.S.C. § 1693f(d)**
**(Against Wells Fargo)**

171. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

172. When a financial institution determines no electronic transfer error occurred, it must provide a written explanation and promptly provide copies of all of the documents it relied on if the consumer asks.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

173. Plaintiff requested the evidence on December 26th, 2025. Wells Fargo acknowledged that request. On information and belief, it failed to provide promptly all of the documents it relied on for the Zelle denial, including the underlying records on which it based its conclusion about the online session.

## Twenty-Fourth Cause of Action
## Violation of California Penal Code § 530.8
## (Against Wells Fargo)

174. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

175. California Penal Code § 530.8(a) requires an entity that received an unauthorized loan application to provide the victim with the covered application, authorization, and related transaction records free of charge within ten business days after receiving the victim's request, qualifying identity theft report, and required identifying information.

176. Wells Fargo received an unauthorized online application for a $9,000 loan in Plaintiff's name. On September 15th, 2026, Wells Fargo received Plaintiff's written request, his signed and submitted FTC Identity Theft Report, and identifying information in the categories used to apply for the loan. On information and belief, Wells Fargo failed to provide all covered records in its possession within ten business days, including the complete electronic application information and records showing how the application was authorized. That failure deprived Plaintiff of records he needed to investigate the unauthorized application and contest Wells Fargo's claim that he owed the debt.

177. Under California Penal Code § 530.8(d)(2), Plaintiff seeks an order requiring Wells Fargo to produce the outstanding records, damages according to proof, a

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

statutory penalty of $100 for each day of noncompliance, and reasonable attorney's fees.

### Twenty-Fifth Cause of Action
### Violation of the Rosenthal Fair Debt Collection Practices Act
### (Against Wells Fargo)

178. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

179. Wells Fargo regularly collects or attempts to collect personal loans on its own behalf in the ordinary course of business. It is a debt collector under California Civil Code § 1788.2(c). The obligation Wells Fargo claimed Plaintiff owed arose from a purported personal loan and was an alleged consumer debt under the Rosenthal Act.

180. On November 12th, 2026, Wells Fargo attempted to collect the disputed loan by telling Plaintiff he owed $9,776.05 and offering to accept $3,910.42 to settle the account. Plaintiff did not apply for or authorize the loan and did not owe the debt. By representing that Plaintiff was liable and seeking payment from him, Wells Fargo materially misrepresented the legal status of the debt in violation of California Civil Code § 1788.17, which incorporates 15 U.S.C. § 1692e(2)(A).

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered for each Plaintiff and against each Defendant for:

a) Actual damages;
b) Statutory damages;
c) Treble damages;

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

d) Punitive damages;

e) a declaration that Plaintiff is not obligated to Defendants on any claims pursuant to Cal. Civ. Code § 1798.93(c)(1);

f) a declaration that that any security interest, or other interest, Defendant purportedly obtained in Plaintiff's property, in connection with any claim, is void and unenforceable pursuant to Cal. Civ. Code § 1798.93(c)(2);

g) Dismissal of any cause of action filed based on a claim, which arose as a result of identity theft pursuant to Cal. Civ. Code § 1798.93(c)(4);

h) An injunction restraining Defendant from collecting or attempting to collect on the claim, from enforcing or attempting to enforce any security interest or other interest in Plaintiff's property in connection with the claim, or from enforcing or executing on any judgment against Plaintiff on the claim pursuant to Cal. Civ. Code § 1798.93(c)(3);

i) An order directing that each Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

j) An order directing that each Defendant send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information;

k) Attorneys fees and costs;

l) Statutory damages of $5000 for each violation of the CCRAA, pursuant to Cal. Civ. Code §1785.31(a)(2)(B);

m) A civil penalty of $30,000 pursuant to pursuant to Cal. Civ. Code § 1798.98(c)(5);

n) Statutory penalty of $100 per day of noncompliance with Cal. Penal Code

§530.8, pursuant to Cal. Penal Code §530.8(d)(2),

o) and, Award to Plaintiff of such other and further relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED.**

181. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**THE CARDOZA LAW CORPORATION**

DATED: November 24, 2026

BY: /s/ Lauren B. Veggian
Lauren B. Veggian, Esq.
Michael F. Cardoza, Esq.
Attorneys for Plaintiff
David Wilson Hardie

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

## ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.